We have two cases on for argument this morning, the first of which is Button v. Board of Regents of Nevada. Are counsel ready? Very ready. Appellant may argue. Mr. Amesbury? If it may please the court, my name is David Amesbury. I represent Leslie Button, the appellant in this matter. I appreciate the court's time this morning in taking this critical issue before your honors. The issue before the court is that of the granting of summary judgment in the Southern Nevada District Court. Based on the record, the court found that there was no material disputed fact, when in fact the record belies many instances, along with countless emails that my client made to DRC, both at the Clark County Community College System as well as the University of Nevada College System. It was through her attempts, through spotty, I would say unqualified interpreters, lack of interpreters, times in which the interpreters did not appear, as well as note takers, that she went to the DRC at the University and asked for real-time captioning. At that point, she was denied. Now, under the law, they cannot deny based on financial reasons, but nonetheless, it was denied. On the heels of that, she brought suit in the Southern District of Nevada, and there again, in our opposition to the summary judgment... Has Congress divided the District of Nevada? I may have mis... No, it has not. The Las Vegas Division. Las Vegas Division, I'm sorry. I thought something had happened. No, I just flew there yesterday, not that I'm aware of, but I do appreciate you correcting me on that. What's her current status? Leslie? She is going to the University of Rochester. She's in New York. She was not satisfied with the program at UNLV. Ultimately, if you were to prevail on this appeal, what are you seeking? Is it a damage action at this point? Well, it would be at this point, Your Honor. Because I gather that because she's no longer at the University, that there's no accommodation that you would seek from the court, right? That is correct. We understand, actually, since the initiation of the proceedings, some of the issues that we've raised, I mean, outside the record, have been resolved, and hopefully by perfecting this case in Nevada, we hope to improve the overall system. We, again, disagree with the lower court in terms of the fact that one part of the brief they did evidently didn't take notice of our expert, our expert's report, in contradicting the University's expert in that instance. We're asking for three accommodations, no takers, interpreters, and real-time captioning. When you say we're asking, in the present tense, are you seeking injunctive relief, even though she's not attending the school and apparently has no intent to do so? Well, the fact that she was denied, we feel that her rights were violated in that sense. Using the present tense, you may have been talking, actually, about the past, but I am interested in what relief is being sought at this point. Is it solely monetary damages, or do you still have a claim for injunctive relief? At this point, it would be solely monetary damages. Monetary damages, isn't it the case that you need to establish that the defendants acted with deliberate indifference? We feel the record shows the pattern of her requests, denials, through her emails, shows a level of indifference. I understand the legal criteria in which you're citing. That, coupled with her request for additional service, which was ultimately denied, we believe would establish that pattern. Was there any request she made that was not responded to in some fashion? I believe, well, in reading her emails and going through the countless depositions in this case, the university, after being on notice on unqualified interpreters, interpreters that did not appear at their scheduled times, as well as note takers, did everything they could in an attempt to remedy the situation. However, there was an overall pattern. The accommodation through DRC, it's our belief, did not meet the needs of Leslie Button in this particular case, after repeated requests, repeated requests, repeated requests. Well, that's what I'm trying to separate. I think there's a difference between inadequate, or maybe even incompetent, and indifferent responses. And it seems to me you're acknowledging that the record does appear to indicate that they were making efforts. It's not like they disregarded the request. They just didn't do a very good job in the substantive responses to the needs. And that's indeed a good question and a bright line. At what point do repeated requests and continual, I guess, lack of a better word, malfunctioning of the system rise to the level of indifference? And we believe that we established in the record below countless emails through our experts' disagreement with the university experts that, in fact, we did in this instance. Well, assuming for the sake of argument that we were to agree with you that there's a genuine issue of material fact as to reasonable accommodation, but agree with the regents that there's no genuine issue of material fact on deliberate indifference, where would that leave you? Not in a very good shape. Because you only have monetary damages on the table. That's correct. And to obtain monetary damages, you have to get a judgment on the deliberate indifference count. And I'm repeating what Judge Clifton said, but I want to make sure... Yes, and I think you bring a very good point. You know, again, we... So if you can't establish deliberate indifference, you can't recover damages? Under the law, that's my understanding. But, again, the pattern here with the emails, we believe, would show a conscious indifference in this case, along with the testimony of that of our experts. One question about the experts. Sharon Solo, I could not find in the record a CV. Is there one in the record? I have the record with me. It was provided with the deposition. I believe it would have been attached as an exhibit to the deposition. Maybe you could give me the reference to that on rebuttal. Okay, I'll see if I can find that. Anything else? No, any questions? I don't see any. Okay, thank you. Thank you for coming down today. I'll look for it, thank you. We'll hear from the Board at this time. Good morning. Good morning, Your Honor. Questions? Question, Your Honor, Chair, on behalf of the Board of Regents. And if the Court will allow me, at Council seat with me is Ms. Dan Welch, who is a second-year law student at the Boyd School of Law and articles editor of Nevada Law Journal. Your Honor, if I may... We're not going to divide time in argument. You're the sole... I'm the sole... Go right ahead. Your Honor, to pick up on the point that was raised earlier, and that is, it is our position that, even assuming that all the assertions made by Ms. Barton are correct, there do not rise to the level of deliberate indifference. The record is very clear that any time that Ms. Barton complained to the University, the University responded. There may have been occasions when the response was not as fast as she would have liked, but the record again does show that, in spite of that, the University did respond to every complaint that she did make. Now, with respect to... She talked about three classes. Spelling... Environmental science... Spelling, where she got a D minus. That's correct. Environmental science, where she got a B minus, B as in boy. Correct. And global economics, where she got a D. That's correct, Your Honor. And after her dealings with the University system, both community college and at UNLV, she transferred to the State University of New York... At Cortland. And made the Dean's List. That's what she alleged. I don't know. Do you have any contrary proof? I don't have any contrary proof, Your Honor. Let's assume it's correct. And let's assume that SUNY is more responsive on these kind of requests. Doesn't it indicate that she can perform when provided reasonable accommodations? It can, except that, Your Honor, I want to take the court back. When she transferred to Community College of Southern Nevada from Rochester Institute of Technology, the largest post-secondary institution for the blind, her GPA was 2.6. She graduated from Community College of Nevada with a GPA of 3.08. And the first semester course at the University of Nevada, Las Vegas, her GPA was 2.76. So, I would not necessarily agree that because she made the Dean's List, therefore accommodations were inadequate. Because, clearly, the services that were provided at Rochester Institute of Technology would have been one of the highest, given the fact that that's an institution devoted exclusively to deaf students. When she transferred, was she told that? When she transferred to CCSA. Yes, she brought her transcript with her. Was she told that, Ma'am, you're coming from the leading school in the country providing services to the sightless. We're not at that level. No, she was not told that. That was never used as a basis for denying her any accommodations. And the three courses that we just talked about, Spelling 95, Environmental Science, Global Economics, those were all at UNLV? No, only Global Economics was at UNLV. Spelling and Environmental Science were at a community college. And if I may point a call to the affidavit provided by her instructor in Spelling 095, that she did miss some tests. She did miss some assignments. So, again, the grade of C- and the grade of B- may be reflective of the fact that she did not complete all the assignments at the college. With respect to Environmental Science, again, as the call will note, she did get B-. Again, the problem with that cause was the fact that she did not alert the community college about the fact that she did not have a note-taker in the class. In fact, it was the professor who informed the college that that was the case only after she had taken the... It sounds like you're arguing the facts. And when you start arguing the facts, then what strikes me is there's a genuine issue of material fact that the jury ought to resolve. You're giving an explanation instead of saying, well, we have to assume what she says is all true. You're defending the action. And you're entitled to do that, but not at this stage. No, I'm just pointing out that even if we assume all that, under Duval, she still has not met the standard of deliberating difference. There is no way that merely not having an interpreter or an interpreter whom she described as incompetent necessarily rises to the level of deliberating difference. Deliberating difference requires something higher than negligence, which is what you held in Duval, that negligent conduct certainly falls far short of recovery. Excuse me. The district court concluded that reasonable accommodation was a question of law. What the district court said was that in most cases, that is a question of law unless there are substantial facts or unless there is substantial evidence in the record. And this court has made it very clear that in reasonable accommodation cases, as well as generally in all summary judgment matters, the court is supposed to conduct a particularized review of the record. And so after that review of the record, the court concluded that no genuine issues of material fact had been raised and that therefore the matter could be decided. The district court relied upon a First Circuit case, Wynn v. Tufts University? That's correct. Is that the rule in the Ninth Circuit? The Ninth Circuit indeed, in Frank v. Fuller, which was also a reasonable accommodation case, held that a postal employee who had been fired because of alcoholism problem could be dismissed. Not on the details of facts at the moment. Doesn't Fuller say that reasonable accommodation is ordinarily a fact question? But he did also say that if in fact the evidence of record does show that there are no genuine issues of material facts precluding summary judgment. Sure, that's a summary judgment standard, but the First Circuit has gone beyond that in these kinds of cases and adopted a different standard. But I think Judge Hockman's question is the same as mine. The standard that the district court relied on and you rely on is not the one that the district court relied on. The question is whether a defendant has met his duty of reasonable accommodation is a question of law. What case says that? No, there is no specific Ninth Circuit case that says that. And in fact the cases say it's usually a question of fact. It's a question of fact absent any genuine evidence of record that would preclude summary judgment. Right. But that's not what the First Circuit standard is. I mean, the point being, it seems to me that the district court relied on the incorrect standard in evaluating this reasonable accommodation claim. No, it seems to me that if, I mean, the First Circuit standard can be harmonized because it does also say that absent evidence of pretext or bad faith. No, no, it has bad faith or pretext. That's not a Ninth Circuit standard, is it? No, that's not. Okay, so we start from the premise that the district court used the wrong standard, right? Well, let's assume that that is in fact the case. The point that we're trying to make is that the evidence clearly does not suggest that even if the district court used the wrong standard, let's assume that that is the case, the evidence that was presented by the plaintiff doesn't rise to the level of intentional discrimination warranting award of monetary damages. But you concede that there's enough in this record that there's a genuine issue of material fact and unreasonable accommodation? No, Your Honor, we don't concede that because what my opponent did not present to the court is that if you take the three causes on which the appellant bases her claim that she was denied reasonable accommodation, the facts don't support, you know, those assertions. Clearly, she is basing it upon the fact that she did not get higher grades than she thought she could have received. But we've indicated that, you know, the mere fact that you didn't get a higher grade is not evidence that accommodation was insufficient or that more accommodation may be necessary. What she wanted was to have every cause transcribed for her, every cause that had either retime captioning in the class, even though her primary mode of communication was American Sign Language. And my clients considered that particular mode of communication and  that was far more suitable to her needs than retime transcription. Now, the other two causes are pretty much the same with respect to her primary spelling. Again, the problem was not that the interpreters were inadequate, but because of her definition of what adequate interpretation is. Well, again, to reach your conclusion, and I'm not saying that a jury wouldn't, but to reach your conclusion, we have to look through the lens of the university, and we have to, it seems to me, weigh some facts and make some judgments. And that, to me, suggests that that's not an appropriate issue on summary judgment on that issue. Yeah, but regardless of that issue, we have to assume, if we assume the facts that she stated, that the translators were inadequate to meet her needs, we assume all those facts, and we draw the inferences in her favor, which we have to at this point. It seems to me that there's probably a question of fact. Yeah, even if you did that, again, the fact still remains that the allegations that she's made do not rise to the level of deliberate indifference. There's no dispute. You're changing the topic. There are two claims. I'm talking about reasonable accommodation, and then every time I say there's a genuine issue of fact on that, you say yes, but there's no deliberate indifference, which is the second claim. To address your first claim, even under the reasonableness standard, you still have to show inability to participate in the materials of the class. If we lack confidence, this is a hypothetical, if we were to lack confidence in the district court's determination on reasonable accommodation, first because it apparently said it was a question of law, which it's not, second because it relied upon a First Circuit authority and not Ninth Circuit authority, although the First Circuit authority is not necessarily inconsistent, how can we have confidence that there are no material questions of fact with respect to indifference? My answer to that is simply that the substantial evidence to create genuine issues of fact has not been presented in the record. These fact questions are necessarily nuanced. Anybody who's dealt with a bureaucracy knows that sometimes they can respond automatically, even promptly, and the response is not a response at all. It's a stall. It's not adequate. They send you to another office. They ask you to fill out another form. And these are nuances ordinarily we like juries to determine. It may be that after a jury hears all this evidence, they'll conclude that the community college and UNLV did everything reasonably and certainly didn't act with deliberate indifference, but it's a matter of nuance, isn't it? I would agree with the court. This court did not say that that's an issue of law. Certainly, Frank v. Fula stands for the proposition that a court is entitled to apply the normal summary judgment standards, even in resolving reasonable accommodation questions, because that's exactly what the court did in this case. The court went through all the evidence from both sides and determined that the evidence presented supported the district court summary judgment for the United States Postal Service because the court had done everything reasonable under its obligation. Now, it seems to me that this court is not necessarily saying that under no circumstance would a reasonable accommodation issue be decided by a summary judgment mechanism, so long as there's evidence in the record to support what the court did. I do recognize that the court is struggling with whether or not the district court properly considered the evidence in a light most favorable to the plaintiff, and I will submit that certainly the court did because the whole evidence that this plaintiff presents to this court is that her expert disagreed with the evidence in the record, but the problem is that her expert was never in the classroom, never consulted any of the service providers, never saw any of the interpreters in the classroom,  consulted any of the interpreters in the classroom. And I would like to submit that the only issue here is damages. The standard for award of damages is deliberate indifference, and we believe that the record doesn't support a finding of deliberate indifference, and we ask that  affirm this report. Thank you for your argument, counsel. Thank you, Your Honor. Briefly, in reviewing the record, Ms. Solo's background and education experience and training are actually within the deposition itself. I, as our normal practice, normally attach the CV as part of the deposition. I have not seen it. In this case, there wasn't one attached. It's in the body of the record. I believe the record is repeat with instances of e-mails from Ms. Button. I disagree with counsel in that our expert, Ms. Solo, had access to all the e-mails, the transcripts in the case, and the transcripts in the case. I believe all the evidence would be properly put before a jury in this case. Summary judgment in this case was premature. It strikes me that you're not fighting about a whole lot. Is this a case that would be
judges: Hawkins, Thomas, Clifton